PER CURIAM.
This disciplinary proceeding by The Florida Bar against Thomas L. White, a member of The Florida Bar, is before us on complaint of The Florida Bar, report of the referee, and petitions for review by White and by The Florida Bar.
The Florida Bar filed a complaint against respondent, charging that respondent purchased real property from his client in violation of the Code of Professional Responsibility because (1) the price was inadequate, (2) he failed to make complete disclosure to his client, (3) a conflict of interest existed, (4) he intentionally failed to disclose fully all pertinent facts known to him, and (5) he placed his personal interest ahead of his client. The complaint further charged that respondent charged a clearly excessive fee for handling the estate of his former client.
The referee made the following findings of fact as to White’s misconduct:

FINDINGS OF FACT AS TO COUNT

I: The following findings of fact are made from the evidence presented as to Count I:
Mr. D. V. Farnsworth, a client of Respondent, Thomas L. White, advised Respondent that he wanted to sell his land in Polk County, Florida. Respondent asked what price he was asking for the land, and the client advised Respondent that he wanted Five Hundred ($500.00) Dollars per acre. Thereafter, Respondent viewed the land with the client, and subsequently advised the client that he was interested in purchasing his land for Five Hundred ($500.00) Dollars per acre, but would not be able to handle the entire 220 acres himself for financial reasons, and would want to get someone to join with him in the purchase. Respondent contacted one William S. Smith, a local realtor, and asked him if he were interested in participating. Smith was interested and also wanted to bring in the third participant, a Mr. Nafziger, another realtor in nearby Davenport.
The three agreed to purchase the property at Five Hundred ($500.00) Dollars per acre, but at no time did the Respondent ever advise his client, Mr. Farns-worth, that the land might be worth more than Five Hundred ($500.00) Dollars per acre or that Mr. Farnsworth should either seek an independent appraisal, or independent legal advice.
Subsequent thereto, the Respondent and the two realtors purchased the property after Respondent prepared a Trust Agreement for the three individual purchasers, apparently without disclosing to the client, Mr. Farnsworth, the identity of the other two participants. The evidence offered by Respondent is that the client, Farnsworth, (deceased at the time of the hearing) made no inquiry and was not particularly interested in knowing who the purchasers were.
The evidence indicates the value of the land at the time in question was uncertain and speculative. The testimony ranged from a low of Three Hundred ($300.00) Dollars per acre to a high of Eight Hundred ($800.00) Dollars. I find that the reasonable value at the time and place was approximately Five Hundred ($500.00) Dollars to Six Hundred ($600.00) Dollars per acre, close to the price (Five Hundred ($500.00) Dollars per acre) actu *1296 ally paid by Respondent. It is apparent that the client might have obtained a higher price had he been more determined to do so with negotiations or by looking for other buyers, although it is equally apparent that he might have obtained less, or even been unable to make a sale at that time. The evidence indicates that the 220 acres in question were far from being ideal property, as approximately 65% to 70% of it was low marshland.
The evidence establishes that Respondent, on purchasing the property, took title in the name of his wife, R. S. White, as Trustee, without disclosing to Farns-worth the identity of the other purchasers or the purpose of the trust. No finding of fraud or deliberate concealment was susceptible from the evidence. It is my finding that it was more a lack of communication or perhaps even lack of concern on the part of the Respondent for the client. Respondent appeared to be oblivious to the fact that as an attorney he had any ethical or legal obligation to the client, Farnsworth, once the Agreement to Purchase had been entered into other than to pay the price and live up to the terms of the agreement. At the same time I find no overt intent to defraud or any dishonest motive apparent.
There arose a conflict of interest almost of necessity with Respondent’s purchase of the property while at the same time representing his client, the seller. This manifested itself in the financing agreement, where Respondent, in the interest of his client, recommended and consummated the sale on the basis of an installment sale with 29% down and the balance in five (5) equal annual installments for income tax purposes, while at the same time in his own interest and against the interest of his client, put in the purchase money note a prepayment clause permitting Respondent and his two co-purchasers to prepay the note anytime. Further Respondent did in fact prepay the note the following year with alleged adverse tax consequences to the client or the client’s estate. The client died in June 1972 following the sale in April 1972. The evidence is susceptible of a finding that the client was in ill health, fairly old, and anxious to liquidate his property prior to his death so that the monies could be passed to his widow without the likelihood of a will contest. As a practical matter, this did not seem a valid reason legally, since if the will were properly drawn and executed, the likelihood of a contest would have been either minimal or at least the likelihood of success of a will contest would have been minimal.
I find that the Bar failed to prove that any actual adverse tax consequences ensued as a result of the prepayment of the note. The expert testimony offered by the Bar and the expert testimony offered by the Respondent were conflicting and susceptible of the conclusion that the tax consequences were far from clear and ranged from a maximum adverse consequence of Two Thousand Four Hundred ($2,400.00) Dollars additional tax to no adverse tax or only Fifty ($50.00) Dollars additional tax, depending on the variable assumptions of the witness. In either event, the actual fact is uncontroverted that IRS has not even called upon the estate or the widow to pay any of the tax, much less any interest or penalty, and the expert testimony strongly supports the finding that the likelihood of the estate or client having to ever pay any extra tax at this late date is remote. Therefore, I find that any adverse tax consequence is one (1) doubtful and two (2) more theoretical than real.
FINDINGS OF FACT AS TO COUNT II: Count II is basically for charging a clearly excessive fee for handling a minimal estate in which there were no probate assets. The evidence clearly established that the fee in the amount of Three Thousand Seven Hundred Fifteen Dollars ($3,715.00) was in fact charged and paid.
The evidence strongly indicates that the amount of fee was excessive; however, it is a more difficult question as to *1297 whether the fee was “clearly excessive” to the extent that it warrants disciplinary action. This is in part caused by two factors: (1) The client has never complained that the fee was excessive, and even at the final hearing testified that she had never complained, and if the fee “was legal”, she had no objection; (2) Respondent’s records were inadequate to determine how much time or work he really did expend on behalf of the client. Respondent’s testimony was that he estimated that he had put in approximately forty (40) hours for related work. I do not find this realistic or creditable. The evidence did not reveal any legal work of any particular significance, difficulty, or value being performed; at most a series of office conferences, some claimed legal research that was not plausible, and nominal probate work. Clearly under any view of the evidence, the fee was grossly excessive. In my opinion the fee was excessive to the extent that it was clearly excessive under the circumstances as to warrant disciplinary action.
As to the conflict of interest charge, the referee recommends that respondent be found guilty of violating DR 5-101(A)[1] and DR 5-104(A)[2] and, as to the attorney’s fee charge, that respondent be found guilty of violating DR 2-106.[3] The referee recommends that respondent be suspended from the practice of law for a period of two months with automatic reinstatement.
After review of the record, report of the referee, and briefs of the parties, we conclude that the referee’s findings are supported by clear and convincing evidence, and we approve the findings and recommendations of the referee.
Accordingly, Thomas L. White is hereby suspended from the practice of law for a period of two months, effective April 9, 1979, with automatic reinstatement on June 8, 1979. White is further directed to pay the costs of these proceedings in the amount of $4,598.97.
It is so ordered.
ENGLAND, C. J., and ADKINS, OVER-TON, SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.
BOYD, J., concurs in part and dissents in part with an opinion.

. DR 5-101 Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.
(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

. DR 5-104 Limiting Business Relations with a Client.
(A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.

. DR 2-106 Fees for Legal Services.
(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fée include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.